United States Court of Appeals,

Eleventh Circuit.

No. 94-9401.

EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Plaintiff-Counter-defendant-Appellant,

v.

Gary S. STUDENIC, Defendant-Counter-claimant-Appellee.

March 13, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-CV-416-RLV), Robert L. Vining, Jr., Chief Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

## I. BACKGROUND

Gary Studenic became a licensed chiropractor in 1979. He opened his own chiropractic clinic after obtaining his license and by 1984, had opened a second clinic. In 1980 and 1984, Studenic entered into three disability insurance contracts with Equitable Life Assurance Society of the United States ("Equitable"). The first policy provided for payment of $2000 per month should he become disabled from the practice of chiropractic. The second policy provided for an additional $2000 per month in the event he became disabled. The third policy, which was an overhead disability policy, would pay $2000 a month for 15 months. The contracts provided that if the insured became "totally disabled," he was required to notify Equitable of the claim and provide monthly statements to Equitable as long as the disability continued. The contracts defined the term "total disability" as

"the inability of the insured, due to injury or sickness, to engage in the substantial and material duties of your regular occupation."

Studenic had a chronic shoulder condition rooted in a history of shoulder injuries sustained during a college wrestling career. In 1984, while working at his chiropractic clinic, Studenic aggravated his condition when he fell from a ladder. He experienced significant pain while treating patients between 1984 and 1988. Studenic then found that he was no longer capable of enduring the pain on a regular basis and elected not to treat patients after January 1989. Although Studenic no longer practiced chiropractic after January 1989, he continued to own and operate his two chiropractic clinics.

Before filing a claim for total disability due to his shoulder condition and giving Equitable notice about the injury a certain event transpired. Despite his shoulder condition and resulting inability to practice chiropractic, Studenic was nevertheless able to play tennis and injured his knee in the process of doing so on June 18, 1990. Studenic filed a total disability claim on August 17, 1990, which pertained solely to his knee injury. Studenic asserted in the claim form that it was a disability due to his left knee injury that caused him to quit practicing on June 18, 1990. However, apparently he had not been treating patients for at least seventeen months at the time his knee was injured. Studenic confirmed during his trial testimony that nothing was mentioned about his shoulder injury in the initial total disability claim.

On September 21, 1990, over twenty months after he quit practicing chiropractic, Studenic filed a claim form with Equitable

alleging a disability attributable to his shoulder injury.[1]  Notes introduced at trial made by the Equitable claims agent who handled Studenic's claim revealed that in a telephone conversation with the agent, Studenic explained that he had not filed a claim sooner because it did not occur to him to do so.  Studenic testified at trial that his disability began when he first stopped working because of the trouble with his shoulder in 1989.

Equitable paid Studenic $44,133.33, equalling nine months total disability benefits for the period between June 18, 1990 and March 17, 1991.  However, in April 1991, Equitable discontinued further payment of total disability payments to Studenic based, in part, on a surveillance video that showed him performing various physical activities at his farm which Equitable believed were inconsistent with his claim for "total disability."

Equitable resumed payments to Dr. Studenic after an independent medical exam provided inconclusive evidence with regard to his disability.  The payments made were for 50% of the maximum benefits and amounted to $16,000 in partial benefits covering an eight month period.  After that period, Equitable discontinued

---

[1]The September 21, 1990 claim form solely listed Studenic's knee injury as the disabling condition which caused his inability to practice chiropractic. (Exhibit 5)  Although some mention was made by an attending physician of a chronic shoulder condition, our reading of the claim form causes us to believe that no real claim whatsoever was made as a result of that condition. Nevertheless, the parties to this case treated the aforementioned claim as one based on Studenic's shoulder injury.  Further, as noted in the order on the motion for judgment as a matter of law, the district court accepted as fact that the claim form filed on September 21, 1990 was based on a shoulder disability. Therefore, for purposes of dealing with this suit, we will accept this proposition, although there is grave doubt that any claim was made specifically based upon a shoulder condition.

payments and filed an action for declaration of its obligations under the policies.

## II. PROCEDURE

On February 20, 1992, Equitable filed a declaratory judgment action against Studenic requesting clarification of its rights, obligations, and liabilities, if any, under the three disability insurance contracts entered into with Studenic between 1980 and 1984. In its complaint, Equitable alleged, inter alia, that Studenic was neither totally disabled nor residually disabled, as defined in the insurance contracts, and that he failed to satisfy conditions precedent to payment under the contracts. Studenic counterclaimed and demanded a jury trial, seeking a declaration that he was disabled, the payment of past due disability benefits, and bad faith penalties and attorney's fees pursuant to *Official Code of Georgia Annotated* § 34-4-6.

Equitable moved for a directed verdict at the close of both Studenic's case in chief and at the close of all the evidence. One of the grounds for the motion was that Studenic did not timely file his claim for disability based on the notice requirement in the contracts and the eighteen month delay in filing. Both of Equitable's motions for directed verdict were denied. The jury returned a verdict in Studenic's favor and specifically found that Studenic was totally disabled from engaging in his occupation as a chiropractor within the meaning of the three insurance contracts, he was entitled to a 1% award of bad faith penalties, however, he was not entitled to an award of attorneys' fees. The district court entered judgment on the jury's verdict, which judgment

awarded Studenic, inter alia, $157,747.62 in past due payments and interest under the policies.

Equitable moved for judgment as a matter of law both before and after the district court's entry of judgment on the grounds that: (1) Studenic did not provide timely notice of his disability claims; (2) Studenic was not "disabled" as a chiropractor because Studenic himself testified that he was an investor at the time he filed his disability claims, and because there was no evidence showing Studenic was totally disabled from his occupation as an investor; and (3) an award of bad faith penalties was improper because Equitable's denial of Studenic's claims were not frivolous, unreasonable or unfounded as a matter of law.

The district court granted, in part, and denied, in part, Equitable's motion. The court held that the question of the sufficiency of Studenic's excuse and Studenic's diligence in giving notice to Equitable were properly submitted to the jury. Further, the district court held that Equitable waived its claim that Studenic's occupation was that of an investor at the time the disability claim was filed, by withdrawing a jury charge related to that issue. The district court further held that Studenic was not entitled to recover bad faith penalties because there were factual disputes regarding Studenic's claims. Amended judgment consistent with the district court's order was filed on November 15, 1994. Equitable appeals the district court's order denying its motion for judgment as a matter of law, and the judgment entered thereon.

### III. STANDARD OF REVIEW

"We review rulings on motions for judgment as a matter of law

by applying de novo the same legal standards used by the district court. Both courts consider all of the evidence, but all reasonable inferences must be drawn in the nonmovant's favor. If the jury verdict is supported by substantial evidence—that is, enough evidence that reasonable minds could differ considering material facts—the motion should be denied. A mere scintilla of evidence in the entire record, however, is insufficient to support a verdict." *United States Anchor Manufacturing, Inc., v. Rule Industries, Inc.,* 7 F.3d 986, 993 (11th Cir.1993).

## IV. ANALYSIS

Equitable contends that the district court erred in denying its motion for judgment as a matter of law. Equitable argues that Studenic failed to provide timely notice of his claim and that the delay was unreasonable and unjustifiable, and therefore, the district court should have found, as a matter of law, that Studenic failed to satisfy conditions precedent to recovery. Under the terms of the policy, Studenic was required to give Equitable written notice of claim for "total disability" within thirty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible.

Under Georgia law, "[t]imely notice to the insurer of a claim or occurrence is a condition precedent to the insurer's duty to defend or pay." *Insurance Co. of N. Am. v. Waldroup,* 462 F.Supp. 161, 162 (M.D.Ga.1978). As previously mentioned, the type of loss covered by Studenic's policies was "total disability." The policies' provisions clearly show that "total disability," within the meaning of the contracts, occurs when the insured is unable,

because of injury or sickness, to engage in the substantial and material duties of the insured's regular occupation. Studenic testified that he quit practicing chiropractic in January of 1989 due to his shoulder condition. Therefore, it was in January of 1989 that Studenic was "totally disabled" within the meaning of the policies.

Georgia courts have held that an immediate notice requirement is met as long as notice is given "with reasonable diligence and within a reasonable length of time in view of the attending circumstances of *each particular case.*" *Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.,* 132 Ga.App. 714, 719, 209 S.E.2d 6 (1979) (emphasis added). However, "[u]nder all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice of [a loss] to his insurer was unjustified and unreasonable." *Dillard v. Allstate Insurance Company,* 145 Ga.App. 755, 245 S.E.2d 30, 31 (1978), (citing *Richmond v. Georgia Farm Bureau Mutual Insurance Co.,* 140 Ga.App. 215, 220-221, 231 S.E.2d 245, 249 (1976)). "As is true *generally* with regard to issues relating to reasonableness and sufficiency of compliance with stated conditions, questions of the adequacy of the notice and the merit of [the insured's] claim of justification are ones of fact which must be resolved by a jury...." *State Farm Automobile Ins. Co. v. Sloan,* 150 Ga.App. 464, 466, 258 S.E.2d 146, 148 (1979) (emphasis added). However, "it does not follow that such an issue never can be resolved by the court as a matter of law." *Bates v. Holyoke Mutual Insurance Co.,* 253 Ga. 697, 324 S.E.2d 474, 475 (1985). "Whether or not the condition has been met

is not always a jury question because an unexcused significant delay may be unreasonable as a matter of law." *Townsend v. National Union Fire Ins. Co.,* 196 Ga.App. 789, 397 S.E.2d 61, 62 (1990).

Studenic did not file the claim for total disability due to his shoulder condition for at least 20 months after it was required to have been filed under the policies. What must be determined, therefore, is whether his delay in filing could be found to be reasonable under Georgia law.

In the following instances, Georgia courts have allowed the jury to decide the reasonableness of the insured's excuse: *Lathem v. Sentry Ins.,* 845 F.2d 914 (where the insured alleges he was misled by the insurer into believing there was no coverage); *Smith v. Southeastern Fidelity Ins. Co.,* 258 Ga. 15, 365 S.E.2d 105 (1988) (where the insured is incapacitated or otherwise unable to notify the insurer); *Standard Guaranty Ins. Co. v. Carswell,* 192 Ga.App. 103, 384 S.E.2d 213 (1989) (where the insured believes the claim is specious); *Rucker v. Allstate Ins. Co.,* 194 Ga.App. 407, 390 S.E.2d 642 (1990) (where the insured believes the injury is minor); *Southern Trust Ins. Co. v. Clark,* 148 Ga.App. 579, 251 S.E.2d 823 (1978) (where the insured is confused as to against whom a claim should be made); *Sands v. Grain Dealers Mutual Ins. Co.,* 154 Ga.App. 720, 270 S.E.2d 8 (1980) (where the insured is uncertain whom the beneficiaries of the policy are); *State Farm Mutual Automobile Inc. Co. v. Sloan,* 150 Ga.App. 464, 258 S.E.2d 146 (1979) (where there is lack of knowledge of the insured as to coverage).

Studenic's explanation for not timely filing a claim is basically threefold. First, he testified that he did not file a claim because he never even considered or thought about filing disability. Second, he further testified that he thought his condition might improve if he gave it a chance to rest. Third, he testified that he equated disability with being paraplegic. Thus, he did not realize that the terms of the policy covered that particular injury. The first two explanations do not fall within any of the instances in which the Georgia courts have allowed the jury to decide the reasonableness of an excuse. We hold that those two explanations are unreasonable as a matter of Georgia law.

In some circumstances, Georgia courts have allowed the jury to determine the reasonableness of a delay which was based on lack of knowledge of coverage. In *Sloan,* the court affirmed the denial of summary judgment to the insurer, who had raised the issue of timeliness of notice, where the evidence showed that the delay in giving notice for six months was because the insured did not know the policies would afford coverage for an automobile collision involving the insured's son and a third party.

Nevertheless, there are instances in which Georgia courts have held that explanations regarding lack of knowledge of coverage are unreasonable as a matter of law. In *Townsend,* the court held that an insured's seventy month delay in giving notice to an insurer was unreasonable as a matter of law where the insured's explanation was that he was not aware that he might be entitled to no-fault benefits under his employer's policy and that he did not know the name of the carrier insuring the truck involved in the incident.

Studenic's explanation is less compelling than Townsend's. Townsend did not know he was covered under his employer's policy, whereas, Studenic allegedly did not know he was covered under his own policy which clearly stated that total disability is the inability of the insured, due to injury or sickness, to engage in the substantial and material duties of the insured's regular occupation. We find Studenic's explanation to be unreasonable as a matter of Georgia law.[2]

## V. CONCLUSION

We REVERSE and REMAND for proceedings consistent with this opinion.

---

[2]We note that although Studenic argues that the timeliness of notice issue should be decided by a jury, no such jury charge was requested or given. Indeed, the record fails to disclose that the attorneys ever argued this question to the jury. In view of our ruling, this issue is moot.