[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 30, 2012
JOHN LEY
CLERK

No. 11-14557

_____

D.C. Docket No. 4:10-cv-00118-WTM-GRS

ONEBEACON AMERICA INSURANCE COMPANY,
as successor to Commercial Union Insurance Company,

Plaintiff-Counter
Defendant Appellee,

versus

THE CATHOLIC DIOCESE OF SAVANNAH,

Defendant-Counter
Claimant Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(May 30, 2012)

Before CARNES, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

OneBeacon America Insurance Company, as successor to Commercial Union

Insurance Company, filed suit in the Southern District of Georgia seeking a

declaratory judgment clarifying its duties and obligations under certain insurance policies issued by Commercial Union to the Catholic Diocese of Savannah. Subject-matter jurisdiction was premised on diversity pursuant to 28 U.S.C. § 1332. The Diocese asserted a counterclaim against OneBeacon, alleging that it acted in bad faith and was negligent in its claim handling. After discovery, OneBeacon and the Diocese each moved for summary judgment. The district court granted OneBeacon's motion for summary judgment and denied the Diocese's motion for summary judgment. The Diocese now appeals.

Following oral argument and a review of the record, we affirm. We agree with the district court that the Diocese failed to comply with notice provisions that were conditions precedent to coverage, and did not justify its 21-month delay in notifying OneBeacon of the underlying lawsuit.

## I

## A

On April 6, 2006, Allan Carl Ranta filed suit against the Diocese in South Carolina. Mr. Ranta alleged that he had been sexually molested by Wayland Yoder Brown, an employee of the Diocese, on numerous occasions between 1978 and 1982. Mr. Ranta asserted that the Diocese was vicariously liable for the acts of Mr. Brown, that it was negligent in hiring and retaining Mr. Brown, that it was grossly negligent,

2

that it intentionally inflicted emotional distress, and that it negligently inflicted emotional distress.

The Diocese filed an answer to Mr. Ranta's lawsuit on May 12, 2006. The initial defense was provided by Catholic Mutual Insurance Company, the liability insurer for the Diocese since 1980. The Diocese did not notify OneBeacon of the Ranta lawsuit until January 23, 2008, purportedly because it could not locate the Commercial Union policies before then.

On October 21, 2008, OneBeacon informed the Diocese that it was denying coverage under the relevant insurance policies. On December 8, 2008, the Diocese told OneBeacon that the denial of coverage was based on outdated law and again called upon OneBeacon for defense and indemnification. On June 22, 2009, OneBeacon issued a reservation of rights letter, agreeing to provide a defense in the Ranta lawsuit but reserving its position on coverage. On September 29, 2009, and again on October 7, 2009, the Diocese notified OneBeacon of its disagreement with OneBeacon's position regarding coverage.

The Ranta lawsuit was settled for $4,240,000 during a court-ordered mediation on October 27, 2009. Catholic Mutual paid $1,750,000 of the settlement for the time period covered by its policies, while OneBeacon contributed $175,000. The Diocese paid the remaining $2,315,000, with Catholic Mutual providing an additional

3

$200,000 to offset some of the sums paid by the Diocese.

On May 11, 2010, OneBeacon filed a declaratory judgment action against the Diocese in the Southern District of Georgia, seeking a determination as to its duties and responsibilities in connection with the Ranta lawsuit. The Diocese answered, and filed a counterclaim seeking damages for OneBeacon's bad faith and negligent claim handling.

Both OneBeacon and the Diocese subsequently filed motions for summary judgment. OneBeacon argued that the Diocese had failed to comply with the insurance policies' conditions precedent requiring timely notification, that the Diocese was not entitled to indemnification because it voluntarily compromised the underlying lawsuit, that charitable immunity would have barred any covered claims, and that, absent a jury verdict, the Diocese could not assert a claim for bad faith. The Diocese responded to these arguments and asserted, in part, that OneBeacon had waived all coverage defenses by failing to immediately seek declaratory relief.

On September 2, 2011, the district court granted OneBeacon's motion for summary judgment, ruling that the Diocese did not comply with the notice provisions of the Commercial Union insurance policies – which were conditions precedent to coverage – and that the Diocese's proposed justification for the delay in notification was unreasonable as a matter of law. The district court also rejected the Diocese's

argument that OneBeacon was required to show prejudice resulting from the delay. The district court denied the Diocese's motion for summary judgment, concluding that the Diocese was required to show prejudice before OneBeacon would be stopped from contesting coverage under the policies. Based on the record before it, the district court ruled that the Diocese had been unable to show the required prejudice. On the Diocese's counterclaim for bad faith and negligent claim handling, the district court granted summary judgment in favor of OneBeacon because it had properly denied coverage and because the case did not present the extraordinary circumstances to permit an extra-contractual remedy.

**B**

The Diocese asserts that it has three insurance policies with OneBeacon's predecessor, Commercial Union: one policy beginning on an unknown date and expiring on February 10, 1976 ("Policy #1"); another policy with a period of coverage from February 10, 1976, to February 10, 1979 ("Policy #2"); and a policy with a period of coverage from February 10, 1979, to February 10, 1980 ("Policy #3"). The parties have been able to locate only Policy #2, which states that it is a renewal of Policy #1. Neither party has been able to locate Policy #3, so we – like the parties and the district court – focus on the terms of Policy #2.

Policy #2 is a "Special Multi-Peril Policy" providing coverage for bodily injury

and property damage. It provides, in relevant part, that "[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence[.]" The Diocese, as the insured, had the following relevant duties under the policy:

> 1. In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

> 2. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

Policy #2 also contains a "no-action" clause: "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy[.]"

A section of the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "[B]odily injury" in turn is defined as "bodily injury, sickness or disease sustained by

6

any person which occurs during the policy period, including death at any time resulting therefrom."

## II

We review *de novo* the grant or denial of summary judgment, and apply the same legal standard as the district court. *See Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1363 (11th Cir. 2011). Under Rule 56, "[s]ummary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Brown v. Sec'y of State of Fla.*, 668 F.3d 1271, 1274 (11th Cir. 2012) (citation and internal quotations omitted). *Accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III

"When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008) (citation omitted). Georgia applies the traditional choice of law rule of *lex loci contractus*. *See Convergys Corp. v. Keener*, 276 Ga. 808, 811, 582 S.E.2d 84, 86 (2003).  Under this rule, "the validity, nature, construction, and interpretation of a contract are governed

by the substantive law of the state where the contract is made." *Fed. Ins. Co. v. Nat'l Distrib. Co.*, 203 Ga.App. 763, 765, 417 S.E.2d 671, 673 (1992).[1] Insurance contracts are "constructively made at the place where the contract is delivered." *Id*. at 674-75. There is no indication that the polices were delivered in a state other than Georgia, and the parties seem to agree that substantive Georgia law applies because almost all of the cases cited in their briefs discuss Georgia law. Accordingly, we too apply Georgia law.

## IV

### A

We first address whether OneBeacon waived all coverage defenses by failing to immediately seek declaratory relief. In *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 140 Ga.App. 215, 219, 231 S.E.2d 245, 248 (1976), the court of appeals ruled that

> where the insured refuses to consent to a defense under a reservation of rights, the insurer must thereupon (a) give the insured proper unilateral notice of its reservation of rights, (b) take necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced, and (c) seek immediate

---

[1] "Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law." *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000) (citation omitted).

> declaratory relief including a stay of the main case pending
> final resolution of the declaratory judgment action.

The court then held that the insurer had not waived its defenses to coverage because, by filing an answer, it had protected the rights of both itself and the insured and prevented any default from being obtained in the litigation. *See id*. at 249.

The Diocese argued below, as it does here, that OneBeacon waited too long under *Richmond* to seek a declaratory judgment. The district court denied the Diocese's motion for summary judgment because, under its view of Georgia law, the Diocese was required to show prejudice before OneBeacon would be stopped from contesting coverage under the policies, and it was not able to make that showing. The district court acknowledged that, under Georgia law, an insurer may waive its coverage defenses if it fails to immediately seek declaratory relief, but further noted that Georgia courts had recently softened this stance. *See Kelly v. Lloyd's of London*, 255 Ga. 291, 293-94, 336 S.E.2d 772, 775 (1985) ("[T]he crucial inquiry is whether the rights of the insured have been adequately protected."); *S. Gen. Ins. Co. v. Buck*, 202 Ga.App. 103, 105, 413 S.E.2d 481, 482-83 (1991) (holding that in the absence of prejudice the court could not conclude that insurer had waived coverage defenses); *Danforth v. Gov't Emps. Ins. Co.*, 282 Ga.App. 421, 429, 638 S.E.2d 852, 860 (2006) (stating that noncompliance with *Richmond* does not preclude declaratory judgment

9

where insured cannot show prejudice). The district court concluded that the prejudice complained of by the Diocese – that it was put in the untenable position of either going to trial and facing a ruinous verdict or paying out of its own pocket to settle the claim – was not the type of prejudice that had been contemplated by Georgia courts. Simply put, the Diocese had not defaulted on the Ranta lawsuit due to OneBeacon's delay in seeking declaratory relief.

In our view, the district court correctly denied the Diocese's motion for summary judgment. Given that OneBeacon provided a defense, the Diocese did not suffer the type of prejudice contemplated by *Richmond* and its progeny. "[T]he crucial inquiry is whether the rights of the insured have been adequately protected," *Kelly*, 336 S.E.2d at 775, and here the Diocese's rights were properly protected. The Diocese was already represented by counsel, OneBeacon provided a defense, and the Diocese did not default on the Ranta lawsuit. *See Richmond*, 231 S.E.2d at 249 (explaining that the insurer protected the rights of both itself and the insured by filing an answer and preventing any default from being obtained in the litigation). *See also Caldwell v. State Farm Fire & Cas. Ins. Co.*, 192 Ga.App. 419, 420, 385 S.E.2d 97, 99 (1989) (holding that where the insured was already represented by an attorney and had filed defensive pleadings, the insurer's declaratory judgment action was both timely and fair to the insured). Accordingly, the district court properly ruled that

OneBeacon had not waived its coverage defenses.

**B**

We next turn to the Diocese's delay in notifying OneBeacon of the Ranta lawsuit. Under Georgia law, notice provisions expressly made conditions precedent to coverage are valid and must be complied with unless there is a showing of justification. *See Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga.App. 484, 488, 649 S.E.2d 602, 606 (2007) ("Absent some justification, failure to provide timely notice of an occurrence can defeat coverage[.]"). If an insured unreasonably fails to comply with applicable notice provisions in a timely manner, the insurer is not obligated to provide either a defense or coverage. *See id. See also Forshee v. Employers Mut. Cas. Co.*, 309 Ga.App. 621, 623, 711 S.E.2d 28, 31 (2011) ("[W]hen an insurance policy includes a notice requirement as a condition precedent to coverage, and when the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage."). The insured has the burden of showing justification for a delay in providing notice. *See Kay-Lex Co.*, 649 S.E.2d at 606 (holding that if the insured fails to demonstrate a justification for failing to give notice according to terms of the policy, the insurer is not required to provide coverage).

Notice is proper if given "with reasonable diligence and within a reasonable

11

length of time in view of the attending circumstances of each particular case." *Equitable Life Assurance Soc'y of U.S. v. Studenic*, 77 F.3d 412, 415 (11th Cir. 1996) (applying Georgia law) (citation and internal quotations omitted). Issues about the adequacy of notice or the merit of an insured's alleged justification are generally ones of fact, but in a particular case a court may rule on them as a matter of law. *See id.* at 415-16. *See also Caldwell*, 385 S.E.2d at 99 (stating that a court may rule on the adequacy of notice as a matter of law when "[u]nder all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice of an accident to his insurer was unjustified and unreasonable"); *Plantation Pipeline Co. v. Royal Indem. Co.*, 245 Ga.App. 23, 25, 537 S.E.2d 165, 167 (2000) (explaining that an insured may be able to present evidence of excuse or justification, but under all the facts and circumstances of a particular case the delay may be found to be unjustified and unreasonable as a matter of law).

It is undisputed that the relevant notice provisions were expressly made conditions precedent to coverage. Viewing the evidence in the light most favorable to the Diocese, the latest the Diocese learned of Mr. Ranta's claims was in April of 2006, when it was served with the summons and complaint filed by Mr. Ranta. It is also undisputed that the Diocese did not provide notice to OneBeacon until January of 2008, which was 21 months later. The district court, after reviewing Georgia law,

concluded that the Diocese's 21-month delay far exceeded the delays Georgia courts have found to be unreasonable as a matter of law.[2] The district court also ruled that the justification offered by the Diocese – that the delay was justified because it provided notice as soon as it discovered the policies in question, which were between 26 and 33 years old at the time of the Ranta lawsuit – was unreasonable as a matter of law.

The Diocese contends that the district court erred. According to the Diocese, this case is unique because it involves a lawsuit based on events alleged to have taken place a quarter century earlier, and coverage is premised on policies written just as long ago. The Diocese says that all the cases relied on by the district court are distinguishable because they dealt with either current or very recent policies. Each of those cases, the Diocese argues, also dealt with an insured being unaware that a policy covered a given loss as opposed to an insured being unaware that a policy existed.

---

[2] *See Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 652 F.Supp. 851, 856 (N.D. Ga. 1986) (finding that failure to give notice for period of four to eight months is unreasonable as a matter of law); *Allstate Ins. Co. v. Walker*, 254 Ga.App. 315, 316, 562 S.E.2d 267, 268 (2002) (holding that the insurer was entitled to summary judgment where the insured did not provide notice for almost a year); *Se. Exp. Sys., Inc. v. S. Guar. Ins. Co. of Ga.*, 224 Ga.App. 697, 701, 482 S.E.2d 433, 436 (1997) (stating that a delay of 18 months was unreasonable as a matter of law absent a reasonable excuse for the delay); *EVI Equip., Inc. v. N. Ins. Co. of N.Y.*, 188 Ga.App. 818, 819, 374 S.E.2d 788, 790 (1988) (explaining that an 11-month delay precluded recovery); *Snow v. Atlanta Int'l Ins. Co.*, 182 Ga.App. 1, 1, 354 S.E.2d 644, 645 (1987) (holding that a six-month delay was unreasonable and unexcused).

"Whether reasonableness can be decided as a matter of law, or whether it should remain in the province of the jury depends on two factors: the sufficiency of the excuse, and the insured's diligence after any disability has been removed." *Lathem v. Sentry Ins.*, 845 F.2d 914, 918 (11th Cir. 1988) (applying Georgia law). On this record, we agree with the district court that the Diocese failed to present sufficient evidence about its proposed justification, or of its diligence in providing notice to OneBeacon, to create a jury question.

The affidavit of the Diocese's attorney, Joseph P. Brennan, Esq., was the only evidence presented by the Diocese in support of its contention that the 21-month delay was justified. This affidavit, however, only stated in a conclusory manner that "once served" the Diocese contacted its former insurance agent to determine what insurance coverage was available, that "initially" the only coverage discovered was the Catholic Mutual policy, and that "subsequently" the former insurance agent discovered the existence of the Commercial Union policies and notified the Diocese. The affidavit also stated that "upon discovery of the coverage under the Commercial Union policies," defense of the Ranta lawsuit was tendered to OneBeacon. Significantly, the affidavit did not contain any dates, leaving one to wonder when the Diocese contacted its former insurance agent, what the agent said, when the Catholic Mutual policy was discovered, what steps the Diocese took to locate other policies,

14

when the agent told the Diocese about the Commercial Union policies, or how long after that discovery the Diocese notified OneBeacon. Given the lack of critical detail – detail within the knowledge of the Diocese – and the 21-month delay, the affidavit was insufficient as a matter of law to establish a material question of fact. *See Erber v. Ins. Co. of N. Am.*, 134 Ga.App. 632, 632, 215 S.E.2d 528, 529 (1975) (holding that a conclusory affidavit was insufficient to raise any jury question as to whether notice was properly given). *Cf. Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007) ("The longer a defendant . . . delays in responding to a complaint, the more compelling the reason it must provide for its inaction when it seeks to set aside a default judgment.").

This is not to say that a 21-month delay is always unreasonable as a matter of law. A significant delay, such as the one here, becomes unreasonable as a matter of law only when it is unexcused or unjustified. *Compare, e.g.*, *Kay-Lex Co.*, 649 S.E.2d at 608 (stating that an unexcused and significant delay of one year in notifying insurer may be unreasonable as a matter of law), *with, e.g.*, *Smith v. Se. Fid. Ins. Co.*, 258 Ga. 15, 16, 365 S.E.2d 105, 107 (1988) (holding that a fact issue existed as to timeliness of notice where insured spent five weeks in intensive care and notified insurer three months after accident), *and Gibson v. Dempsey*, 167 Ga.App. 23, 24, 306 S.E.2d 32, 33 (1983) (holding that sufficient evidence of insured's diligence existed to raise

question of fact as to reasonableness of an 11-month delay where insured provided affidavits indicating that approximately five days after the accident she retained legal counsel to investigate whether the defendant was uninsured).[3]

## C

Alternatively, the Diocese argues that OneBeacon had to show prejudice resulting from the delay in notification, and that the district court erred in ruling otherwise. The Diocese says that an insurer must produce positive evidence that it has been materially harmed by the delay in notification, and if it does not, the delay does not bar coverage. We disagree.

Under Georgia law, OneBeacon was not required to show prejudice. Indeed, we have previously said that Georgia law is clear on this issue, holding in *Canadyne-Georgia Corp. v. Continental Insurance Co.*, 999 F.2d 1547, 1557 (11th Cir. 1993), that an insurance company does not need to show prejudice to bar coverage due to untimely notification. Even the cases cited by the Diocese explain that, under Georgia law, an insurer is not required to show prejudice, but rather, its failure to demonstrate prejudice is merely one of the factors that may be considered. *See JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.*, 311 Ga.App. 269, 275-76, 717 S.E.2d 219, 226 (stating that prejudice is not required but may be considered); *Grange Mut. Cas. Co.*

---

[3] In light of our resolution, we need not and do not address OneBeacon's other arguments.

*v. Snipes*, 298 Ga.App. 405, 407, 680 S.E.2d 438, 440 (2009) (stating that prejudice is a factor that may be considered among others). Accordingly, the district court did not err in ruling that OneBeacon was not required to show prejudice resulting from the Diocese's delay in providing notice.

**D**

Finally, the Diocese argues that the district court erred in concluding that OneBeacon was not subject to claims of bad faith and negligent claim handling. We may affirm the district court on any ground supported by the record, *see, e.g., Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1291 (11th Cir. 2008), and do so here. The Diocese cannot maintain a bad faith claim against OneBeacon because, as explained above, there was no coverage under the policies due to the Diocese's unreasonable and unjustified delay in providing notice. Under Georgia law, there can be no recovery for bad faith when there is no coverage. *See Morris v. Ins. Co. of N. Am.*, 114 Ga.App. 517, 151 S.E.2d 813, 814 (1966).[4]

**V**

We affirm the district court's summary judgment order.

**AFFIRMED.**

---

[4] To the extent that the negligent claim handling aspect of the counterclaim survives despite the lack of coverage, we affirm the grant of summary judgment to OneBeacon on the basis of the district court's well-reasoned order.

17